UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, | Case No. 10-14962 |
| Plaintiff, | Stephen J. Murphy, III<br>United States District Judge |
| v. | |
| DAVID MCCANN, | Michael Hluchaniuk<br>United States Magistrate Judge |
| Defendant.<br>_____/ | |

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS COUNTERCLAIM (Dkt. 27)**

**I.  PROCEDURAL HISTORY**

Plaintiff, Federal Deposit Insurance Corporation (FDIC), as receiver for Lakeside Community Bank (Lakeside), removed this action from state court on December 15, 2010, based on a counterclaim filed by defendant David McCann in state court.  (Dkt 1).  FDIC then filed a motion to stay these proceedings while McCann's counterclaim was administratively exhausted.  (Dkt. 6).  The motion to stay was granted by District Judge Steven J. Murphy on March 7, 2011.  (Dkt. 12). On May 20, 2011, McCann filed a motion to lift the stay, indicating that the administrative exhaustion procedure had been completed.  (Dkt. 19).  This motion was granted on June 10, 2011.  (Dkt. 21).  On June 13, 2011, this matter was referred to the undersigned for all pretrial proceedings.  (Dkt. 22).  On November

3, 2011, FDIC filed a motion to dismiss McCann's counterclaim based on lack of subject matter jurisdiction. (Dkt. 27). McCann filed a response on December 7, 2011. (Dkt. 30). FDIC filed a reply on December 23, 2011. (Dkt. 33). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that FDIC's motion to dismiss McCann's counterclaim be **GRANTED**.

## II.   FACTUAL BACKGROUND[1]

On January 4, 2010, Lakeside commenced an action against McCann alleging breach of a Residential Construction Loan Agreement and seeking damages in the amount of $101,785.20. On March 24, 2010, McCann answered Lakeside's complaint. On April 16, 2010, Lakeside was closed by the Michigan Office of Financial and Insurance Regulation, and FDIC was appointed as its receiver. FDIC was filing pleadings in the state court case as the receiver for Lakeside Community Bank as early as April 29, 2010. (Dkt. 2-14, Pg ID 369-370). FDIC was not formally substituted as the plaintiff in the state court action filed by Lakeside against McCann until December 8, 2010, after McCann moved for and received permission to file an amended answer and counterclaim. (Dkt. 2-31, Pg ID 507). McCann filed an amended answer with counterclaims against

---

[1] The recitation of the factual background is largely taken from Judge Murphy's March 7, 2011 Order. (Dkt. 12).

FDIC on December 9, 2010. (Dkt. 2-33). FDIC removed the action to federal court on December 15, 2010 pursuant to 12 U.S.C. § 1819(b)(2)(B).

Pursuant to 12 U.S.C. § 1821(d)(3)(B), FDIC established July 21, 2010 as the date by which administrative claims against Lakeside must be submitted. Newly discovered creditors, meaning creditors who did not appear on Lakeside's books and were not provided mail notice of the claims process before June 21, 2010, are given 90 additional days from the date an individually mailed notice was sent to the newly discovered creditor. FDIC previously asserted, and this Court agreed,[2] that it discovered that McCann was a purported creditor on December 9, 2010, when he filed a counterclaim against the FDIC. FDIC subsequently mailed a Notice to Discovered Creditor to him on December 23, 2010, advising him to submit his claim to the administrative claims process by March 23, 2011. This action was stayed while the administrative process was completed.

The Notice to Discovered Creditor FDIC sent to McCann stated, in relevant part:

---

[2] Judge Murphy rejected McCann's argument that his amended answer and countercomplaint "merely clarified" his original answer. Rather, Judge Murphy concluded that the countercomplaint was a "new claim" as of December 9, 2010, rejecting McCann's argument that FDIC should have known of the existence of the counterclaim in March, 2010. (Dkt. 12). Judge Murphy also specifically rejected McCann's claim that FDIC did not timely comply with the statutory notice obligations because his claim was "not on the books" until December 9, 2010, when he filed his countercomplaint. (Dkt. 12).

> The Receiver previously published a notice to creditors of the Failed Institution in Macomb Daily stating that claims must be filed by the Claims Bar Date referenced above ("Claims Bar Date").
>
> Although the Claims Bar Date has passed, under federal law the Receiver **may** consider claims filed after the Claims Bar Date if: 1) the claimant did not receive notice of the appointment of the Receiver in time to file a claim, AND 2) the claim is filed in time to permit payment of the claim. 12 U.S.C. Section 1821(d)(5)(C). **Nothing in this letter is intended to imply that the Receiver has extended the Claims Bar Date**.
>
> However, for the Receiver to consider your claim, **you must prove to the Receiver's satisfaction that you did not have knowledge of the appointment of the Receiver in time to file a claim before the Claims Bar Date**. Therefore, you must do ALL of the following:
>
> • Complete the enclosed Proof of Claim Form
> • Sign the Proof of Claim Form
> • **Provide supporting documentation both regarding your claim and your lack of knowledge of the appointment of the Receiver** (for example, evidence that someone was on active military duty stationed overseas at the time of the appointment of the Receiver)
>
> Please submit the properly completed Proof of Claim Form and the supporting documentation to the Receiver on or before March 23, 2011 ... .

(Dkt. 27, Ex. 1, ¶ 10 & Attach. D (emphasis added)). In response, McCann submitted the claim form, describing his claims as "claims attached to this form 3rd Party Complaint/Exhibits." (Dkt. 27-2, Pg ID 973). He also submitted a

letter, stating as follows:

> I am writing you this letter to inform you that I am sending this claim for Administrative Claims Process under protest. This process is totally improper, for reasons, including, but not limited to, necessary parties are not joined to the matter; there exists no constitutional authority for FDIC to interpret statutes or other public policies; mailed notice of this process was not timely, and there are matters of significant difficulty, that only the judicial system can resolve (the disposition of the property and back taxes for instance) I have objected to, and filed a Temporary Restraining Order against my participation.
>
> I have submitted the entire 3rd party complaint, for my claim, as it best spells out the nature of my claims, injuries, and damages, incalculable and well in excess of $25,000.00.

(Dkt. 27-2, Pg ID 974). Plaintiff's proposed third-party complaint was filed in the state court action, in conjunction with his motion for leave of court to make service to third-party defendants, although this motion has not been formally resolved. (Dkt. 2-32, Pg ID 508-564). Plaintiff did not, however, submit any information or make any claim regarding his lack of knowledge of the appointment of the receiver.

## III. PARTIES' ARGUMENTS

FDIC asserts that McCann's counter complaint must be dismissed because plaintiff failed to timely submit a claim in the administrative claim process. Thus, according to FDIC, the Financial Institutions Reform, Recovery, and Enforcement

Act (FIRREA) precludes this Court from exercising jurisdiction over McCann's counterclaim. FDIC contends that McCann's claim does not fall within the narrow exception to FIRREA's bar on untimely claims. That is, the exception only applies where FDIC, in its sole discretion, excepts a claim from the filing deadline. In this case, FDIC disallowed McCann's untimely claim because he failed to provide any justification for failing to file a timely claim. Absent proof to the satisfaction of FDIC that the claimant did not receive notice of the appointment of a receiver in time to file a claim before the claims bar date, FDIC maintains that an untimely claim does not fall within the narrow discretionary exception. According to FDIC, because McCann failed to timely file a claim, his claim was not properly exhausted and this Court does not have jurisdiction over the counterclaim.

    In response, McCann argues that he complied with the administrative claims process by submitting his claim in response to the notice provided by FDIC. McCann claims that FDIC's notice was untimely because "FDIC was a litigant in the State action with McCann since April 12, 2010 and McCann was **clearly** on the books of [L]akeside, and his address was also on record, both with the institution, and with the State court, and in its own possession through the State case." (Dkt. 30-1, Pg ID 1170) (emphasis in original). McCann further asserts that his original answer to the complaint in the state case put FDIC on notice of his claims.

McCann also asserts that FDIC participated in a Civil Early Intervention Conference, in which McCann and FDIC met to discuss their claims and try to resolve them. In addition, McCann says that FDIC participated in the state Case Evaluation process, where they discussed their respective claims. McCann says that FDIC did not like the result of the Case Evaluation and, for the first time, made its appointment known to him by filing its motion for summary disposition in state court. (Dkt. 30-1, Pg ID 1172). McCann maintains that FDIC was aware of his claims and failed to provide timely notice.

McCann also argues that FDIC made misleading statements in the state court action that prolonged his discovery of his affirmative defenses and claims. Next, McCann argues that the FDIC's publication notices were defective because of the law circulation of the newspapers in which the notice was placed. McCann contends that disposing of his counterclaim in the manner requested by FDIC would leave serious difficult questions that can only be settled by judicial review and would lead to more litigation. According to McCann, no reasonable person, not in the circles of FDIC could be expected to anticipate a claims bar date for any reason, especially when the FDIC made no effort to put him on notice of the claims bar date, despite many opportunities and triggering events requiring it to do so.

IV. ANALYSIS AND CONCLUSION

    A. Standard of Review

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Further, a district court may "resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction." *Id.* Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Ritchie*, 15 F.3d at 598. In matters regarding subject matter jurisdiction, the court may look to evidence outside the pleadings. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

The Sixth Circuit adheres to the standard of review for Rule 12(b)(1) motions explained in *Mortensen v. First Federal Savings and Loan Ass'n*, 549

F.2d 884, 890 (3d Cir. 1977):

> The basic difference among the various 12(b) motions is, of course, that 12(b)(6) alone necessitates a ruling on the merits of the claim, the others deal with procedural defects. Because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. The decision disposing the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations he or she would be unable to prevail. In the interests of judicial economy it is not improper to dispose of the claim at that stage....
>
> The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different. At the outset we must emphasize a crucial distinction, often overlooked between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. **Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist**.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.

1996) (emphasis added), quoting *Mortensen*, 549 F.2d at 890-891.

B. <u>Analysis</u>

Notably, most of McCann's arguments have already been rejected by the Court. Specifically, the Court previously concluded that FDIC did not have notice of McCann's claim until the counter complaint was filed in state court on December 8, 2010 and that nothing filed earlier put FDIC on notice of McCann's claim. In addition, the Court concluded that FDIC complied with its statutory notice obligations and the newspaper notices were not defective. *See* note 2, *supra*. Thus, to the extent that any of McCann's arguments rely on the FDIC having notice of his claim earlier than December 8, 2010 or that it failed to comply with its statutory notice obligations, those arguments have already been rejected.

The undersigned is also not persuaded that FDIC misled McCann regarding his counterclaim, causing him to assert it late. Even if this were a valid basis to avoid the jurisdictional argument made by FDIC, nothing in this record supports McCann's argument. In fact, his own claim that FDIC was or should have been aware of his counterclaim since April 2010 makes it clear that *McCann* himself was aware of this claim at least as early as April 2010. Thus, the undersigned fails to see how FDIC could have misled McCann into asserting his claim late.

As far as McCann's claim that he exhausted his administrative remedies by complying with the administrative procedure after the FDIC sent the Notice to

Discovered Creditor, his argument misses the mark. Failure to comply with the mandatory administrative claims process deprives courts of jurisdiction. *See* 12 U.S.C. § 1821(d)(13)(D); *Simon v. F.D.I.C.*, 48 F.3d 53, 56 (1st Cir. 1995) ("Section 1821(d)(13)(D)(i) bars all claims against the assets of a failed financial institution which have not been presented under the administrative claims review process"); *see also RTC Mortgage Trust 1994-N2 v. Haith*, 133 F.3d 574, 578 (8th Cir. 1998). The FDIC, as receiver, must conserve and preserve a failed institution's assets, liquidate those assets when appropriate, and use the proceeds of liquidation to make distributions among the failed institution's valid creditors. *See* 12 U.S.C. §§ 1821(d)(2)(A)(ii); 1821(d)(2)(B) and (E). As part of the scheme for winding up failed financial institutions, Congress created a statutory procedure for the orderly and efficient processing of claims. The administrative claims process, set forth in 12 U.S.C. §§ 1821(d)(3)-(13), requires that all claims be submitted to the FDIC by a date established by the receiver. This deadline is the claims bar date. After receiving those claims, the FDIC has up to 180 days to review the claims and either allow or disallow the timely claims. 12 U.S.C. § 1821(d)(5)(A)(i).

Claims filed after the claims bar date "shall be disallowed and such disallowance shall be final." *Addair v. FDIC*, 2011 WL 279 2397, *3 (S.D. W. Va. 2011). As explained in *Addair*, there is, however, one exception: a claim filed

after the claims bar date "may be considered by the receiver if—(I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and (II) such claim is filed in time to permit payment of such claim." 12 U.S.C. § 1821(d)(5)(C)(ii).

As explained by the *Addair* court, to fall within the exception, a claimant must allege that *he was not aware of the appointment of the receiver before the claims bar date*; the allegation that a claimant has no notice of the claims bar date is not sufficient to fall within the exception:

> By its terms ... the exception [in § 1821(d)(5)(C)(ii)] only applies to claimants who do not receive notice of the fact of the appointment of a receiver. The exception makes no reference to claimants who are aware of the appointment of a receiver but who do not receive notice of the filing deadline. Therefore, a claimant's assertion that he or she was not made aware of the filing deadline, as distinct from an assertion that the claimant was not aware of the fact of receivership, does not bring the claimant within the exception.

*Id.* at *3, quoting *FDIC v. Atchison & Keller*, 913 F.Supp. 19, 25 (D. D.C. 1996), quoting *McLaughlin v. FDIC*, 796 F.Supp. 47, 49 (D. Mass. 1992) (internal citations omitted). Furthermore, "[t]he discretion conferred by § 1821(d)(5)(C)(ii) is narrowly drawn, and the FDIC loses this discretion after the claimant has notice of its status as receiver." *Addair*, at *3, quoting *Paul v. FDIC*, 91 F.3d 110, 112 (11th Cir. 1996). Similar conclusions were reach in *Hayes-Broman v. JP Morgan*

*Chase*, 724 F.Supp.2d 1003 (D. Minn. 2010). Where the claimant did not assert that it did not have notice of the appointment of the FDIC as receiver before the claims bar date, the court determined that the claimant had failed to exhaust its administrative remedies and the court lacked subject matter jurisdiction. *Id*. at 1012, citing *RTC Mortgage Trust 1994-N2 v. Haith*, 133 F.3d 574, 578 (8th Cir. 1998) (stating that knowledge of receiving agency's "involvement" with bank sufficient to put claimant "on inquiry notice as to require further inquiry into the details of the administrative process" and holding that the exception does not apply to claimants who are aware of the appointment but who did not receive notice of the filing deadline.).

Just as in *Addair*, *Hayes-Broman*, *Haith*, and *McLaughlin*, McCann does not allege that he did not have notice that the FDIC was appointed as receiver prior to the claims bar date. In fact, he admits having this knowledge in April 2010, long before the claims bar date of July 21, 2010. Accordingly, McCann failed to come within the narrow exception of 12 U.S.C. § 1821(d)(5)(C)(ii) and, therefore, failed to exhaust his administrative remedies. Based on this failure to exhaust, the Court does not have subject matter jurisdiction over McCann's counterclaim and it must be dismissed.

Report and Recommendation
Motion to Dismiss
*FDIC v. McCann*; Case No. 10-14962

## V. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion to dismiss defendant's counterclaim be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 14, 2012				s/Michael Hluchaniuk
						Michael Hluchaniuk
						United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on May 14, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Erinn D. DePorre and Patrick G. Seyferth, and I certify that I have mailed by United States Postal Service the foregoing pleading to the defendant, a non-ECF participant, at the following address: David McCann, 1251 Edgeorge, Waterford, MI 48327.

						s/Tammy Hallwood
						Case Manager
						(810) 341-7887
						tammy_hallwood@mied.uscourts.gov