UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL DEPOSIT INSURANCE CORP.,     Case No. 10-14962

        Plaintiff,

v.                                           Stephen J. Murphy, III
                                           United States District Judge

DAVID MCCANN,                   Michael Hluchaniuk
                                           United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANT'S MOTION TO DISMISS (Dkt. 58) AND**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 57)**

**I.     PROCEDURAL HISTORY**

Plaintiff, Federal Deposit Insurance Corporation (FDIC), as receiver for Lakeside Community Bank (Lakeside), removed this action from state court on December 15, 2010, based on a counterclaim filed by defendant David McCann in state court. (Dkt 1). FDIC then filed a motion to stay these proceedings while McCann's counterclaim was administratively exhausted. (Dkt. 6). The motion to stay was granted by District Judge Steven J. Murphy on March 7, 2011. (Dkt. 12). On May 20, 2011, McCann filed a motion to lift the stay, indicating that the administrative exhaustion procedure had been completed. (Dkt. 19). This motion was granted on June 10, 2011. (Dkt. 21). On June 13, 2011, this matter was referred to the undersigned for all pretrial proceedings. (Dkt. 22). On November

3, 2011, FDIC filed a motion to dismiss McCann's counterclaim based on lack of subject matter jurisdiction. (Dkt. 27). This motion was granted. (Dkt. 37, 49).

On December 28, 2012, plaintiff FDIC filed a motion for summary judgment. (Dkt. 57). McCann filed a response on January 18, 2013. (Dkt. 59). On February 1, 2013, FDIC filed a reply. (Dkt. 63). McCann filed a motion to dismiss the complaint on December 28, 2012. (Dkt. 58). On January 18, 2013, FDIC filed a response. (Dkt. 60). McCann filed a reply on January 25, 2013. (Dkt. 63). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED,** that defendant's motion to dismiss be **DENIED**, and that judgment in favor of plaintiff and against defendant be entered in the amount of $101,785.20 plus interest, costs and attorney fees.

## II. FACTUAL BACKGROUND

On or about September 29, 2006, the now-defunct Lakeside Community Bank (Lakeside) became the owner of a piece of real property located at 549 Alton, Pontiac, Michigan (the property), pursuant to a deed in lieu of foreclosure obtained from the property's previous owner. McCann offered to purchase the property for the amount necessary to satisfy the previous lien on the property and an additional sum to be used to make repairs to the property. On December 15, 2006, McCann

entered into a Residential Construction Loan Note with Lakeside, borrowing $110,000 from Lakeside to purchase and rehabilitate the property. (Dkt. 57-2) (Balloon Note, Riders, and Residential Construction Loan Agreement) (collectively, the Note). The Residential Construction Loan Agreement included a Balloon Note rider that required the entire amount borrowed be repaid in monthly installments of $807.14 commencing April 15, 2007 and continuing until June 15, 2008, when the entire remaining balance was to be paid in a lump balloon payment:

> I will pay principal and interest by making a payment every month. I will make my monthly payments on the 15th day of each month beginning on April 15, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 15, 2008, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

(Dkt. 57-2). The Balloon Note also requires that the interest rate of 8% is the rate McCann "will pay both before and after any default described in Section 6(B) of this Note." (Dkt. 57-2). Further, in the event of default, the Balloon Note requires McCann to pay back FDIC for "all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." (Dkt. 57-2).

McCann subsequently signed two amendments to the Note. The first amendment extended McCann's construction loan period from March 15, 2007 until June 15, 2007 and required only interest payments for this period, with regular payments of $807.14 resuming on July 15, 2007. (Dkt. 57-3). The second amendment extended the maturity date from June 15, 2008 until June 15, 2010. (Dkt. 57-4). On April 16, 2009, McCann defaulted on the Note by failing to make the monthly payment when due. The transaction history for McCann's loan account with Lakeside shows that he has not made any payment since March 25, 2009 and the account has an outstanding principal balance of $96,711.59. (Dkt. 57-5). The unpaid amount due and owing from McCann to FDIC is $101,785.20, as of November 5, 2009, plus interest from that date. (Dkt. 57-6). FDIC also contends that it is entitled to recover costs and attorneys' fees. (Dkt. 57-7).

On January 4, 2010, because McCann failed to meet his loan obligations, Lakeside commenced the case styled *Lakeside Community Bank v. David McCann* in Circuit Court in Oakland County, Michigan, Case No. 10-106579-CK (the State-Court Action). (Dkt. 2, Ex. E). In its one count complaint sounding in breach of contract, Lakeside sought damages against McCann for his unpaid balance under the Residential Construction Loan Agreement, which, as of November 5, 2009, was $101,785.20. *Id*. On April 16, 2010, while the State-Court Action was pending, the Michigan Office of Financial and Insurance

Regulation closed Lakeside and appointed the FDIC as its Receiver. (Dkt. 57-7, Attach. A (Order Appointing Receiver) and Attach. B (FDIC's written acceptance of receivership). As Receiver for Lakeside, and by express operation of law, FDIC "succeed[ed] to all rights, titles, powers, and privileges of" Lakeside, 12 U.S.C. § 1821(d)(2)(A)(i), and was empowered to "take over the assets of" Lakeside and "collect all obligations and money due" to Lakeside, 12 U.S.C. § 1821(d)(2)(B)(i)-(ii), including McCann's outstanding obligation to pay $101,785.20 under the Note.

### III.  ANALYSIS AND CONCLUSION

#### A.  Standard of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus.*

*& Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).[1]

---

[1] Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Memphis City Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting, 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record. Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself. *Id.* ("The standard for granting summary judgment remains unchanged.").

B.   Breach of Contract Claim

1.   The parties' arguments

According to FDIC, McCann knowingly executed the Note, which required him to repay the loan made to him by Lakeside. And, as receiver for Lakeside, FDIC-Receiver has succeeded to all rights, titles, powers, and privileges of Lakeside, including the benefits and liabilities under the Note. *See* 12 U.S.C. § 1821(c)(3)(A). Accordingly, FDIC contends that it is the holder of the Note and has standing to bring this action to recover amounts due and owing under the note. *Id*. In its Complaint, Lakeside sought to recover monies due and owing on the Note. When he executed the Note, McCann promised to pay to Lakeside the principal amount of $110,000 plus interest and all other charges related to servicing and repayment of the loan. Since March 25, 2009, McCann has failed to make any payments under the Note, and thus, he has defaulted on his obligations. Accordingly, FDIC contends that it is entitled to recover from McCann the sum of $101,785.20, together with interest at the rate of 8% per year from and after November 5, 2009, and costs and attorneys' fees. FDIC contends that McCann has not presented any evidence to show that he does not owe FDIC the amount due and owing on the Note.

According to defendant, Lakeside and FDIC have both submitted executed instruments to both this Court and the State Court which are contrary to public

policy, void, and may not be admitted to this, or any court as evidence. McCann also points to the UCC, which he says "permits a court to refuse the enforcement of a contract for the sale of goods, in whole or in part, if the contract is unconscionable or contains unconscionable terms." UCC 2-302. McCann contends that the contracts "are unquestionably unconscionable." McCann further argues that Lakeside made fraudulent misrepresentations when it asserted that it had an ownership interest in the property via "deed in lieu of foreclosure" and stated that the property was offered to McCann for the "exact amount of the liens against the property." According to McCann, he has proven these representations to be false by means of the Quit Claim Deed, the county records for the property and the initial loan disbursement.

    Next, McCann argues that these contracts violate the "Personalty Statute of Frauds" by requiring McCann to promise to "assume the debt or misdoings of another" without that promise to be in writing. McCann argues that a meeting of the minds is an essential element of a contract and none existed here because FDIC admits that the loan was to be for the "exact amount of the liens against the property" and the amount of the original disbursement far exceeded the amount of filed liens. Lastly McCann argues that there was no consideration to support the contract. According to McCann, the Quit Claim Deed clearly proves that the property was not Lakeside's or FDIC's to bargain with on December 15, 2006 and

therefore, he has proven that he received no benefit from Lakeside or FDIC and likewise, Lakeside or FDIC received no hardship from McCann.

    2.    Conclusions

To establish a breach of contract under Michigan law, FDIC must show by a preponderance of the evidence (i) that there was a contract between the parties, (ii) that McCann breached the contract, and (iii) that FDIC "suffered damages as a result of the breach." *Miller-Davis Co. v. Ahrens Construction, Inc.*, 296 Mich.App. 56; 817 N.W.2d 609, 619 (2012); *see also Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999) (applying Michigan law). The undersigned agrees with FDIC that the documents (Dkt. 57, Ex. 1-5) establish that McCann borrowed money and has not repaid that money. As FDIC points out, McCann admits that in December 2006, he executed loan documents with Lakeside (Dkt. 59, pp 8-9) and that $90,451.33 was dispersed so that McCann obtained the property. McCann does not offer any evidence or even argue that the funds were not disbursed as set forth in the contract. McCann also does not offer any evidence suggesting that he made timely payments. Simply, McCann offers no evidence contradicting the evidence offered by FDIC that the parties had a contract, that McCann breached the contract, and that FDIC was damaged as a result.

McCann offers a variety of defenses, none of which alter the conclusion that FDIC is entitled to summary judgment on its breach of contract claim. McCann

claims that the mechanism through which FDIC acquired the property somehow negates the contract but does not offer any legal authority in support of this proposition. The undersigned also fails to see how FDIC seeks to hold McCann liable for the debt of another. Nothing in the record supports this contention. The undersigned finds no evidence or legal support for McCann's contention that the contract is "unconscionable" or that the contract violated the UCC, which applies to the sale of goods, not real property. As to McCann's claim that the contract was not supported by consideration, he is incorrect. "Consideration is '[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee.'" *Toumany Sayon Sako v. Ohio Dep't of Admin. Servs.*, 278 Fed.Appx. 514, 517 (6th Cir. 2008), quoting Black's Law Dictionary (8th ed. 2004). McCann admittedly obtained the property as a result of the disbursement of funds as set forth in the contract. Thus, the undersigned fails to see how the contract is not supported by consideration.

      Finally, McCann's argument that FDIC admitted that the negotiated price was to be for the exact amount of the liens on the property is not well-taken. He points to public records showing the original amounts of the liens placed on the property in 2004 and 2005 total $75,000 (Dkt. 59, Pg ID 1507-1508), but he does not address the fact that the amount of those liens could have changed by the time he entered into this transaction with Lakeside. More importantly, McCann's

argument does not address the fact that the loan agreements do not purport to loan him only $75,000, that he was, in fact, loaned over $90,000, and that he has not repaid the loan.

    C.    *D'oench* Doctrine

Based on McCann's pleaded claims of "unrecorded agreements" with Lakeside, FDIC argues that any such claim by McCann is barred by the *D'Oench* Doctrine. The United States Supreme Court articulated a rule of law prohibiting a party who had lent himself to such an unrecorded arrangement from asserting an unrecorded agreement against the FDIC as receiver. *D'Oench, Duhme Co. v. FDIC*, 315 U.S. 447 (1942). In *D'Oench*, a debtor gave its note to a bank, and simultaneously entered into a written side agreement that the note would not be enforced. After the bank failed, the FDIC as the bank's receiver brought an action to collect on the note. The Supreme Court, in holding that the debtor could not raise a defense based on the written side agreement, found that if a debtor lends itself to a scheme or arrangement which tends to deceive bank examiners and a bank's creditors, it is barred as a matter of public policy from raising a defense based on that scheme against the FDIC. *Id*. at 461.

McCann argues that his defenses are not based on any unrecorded "side agreements." Instead, McCann repeats many of the same arguments discussed above, insisting that he is not liable for breach of contracts because FDIC "freely

claims that the negotiated price for the property was 'the exact amount of the liens on the property' although it has been clearly shown that the price up on initial disbursement was significantly higher than the record liens." (Dkt. 59, Pg ID 1502). As discussed above, McCann's evidence that the liens in 2004-2005 totaled $75,000 does not negate his obligation to pay back the total loan disbursement in excess of $90,000.

D. McCann's Motion to Dismiss

There are several problems with McCann's motion to dismiss, including that it is not based on any particular deficiency of FDIC's complaint. There is no doubt that FDIC's complaint contains a plausible claim for breach of contract and McCann does not appear to contend otherwise. More importantly, however, the vast majority of the arguments raised by McCann in his motion to dismiss have been addressed above and need not be repeated here.

McCann raises one additional argument, however. He asserts that the loan agreement violates Mich. Comp. Laws § 445.1635 (part of the Consumer Mortgage Protection Act) (CMPA), which provides:

> A mortgage loan with a term of less than 5 years *shall not have a payment schedule with regular periodic payments that when aggregated do not fully amortize the outstanding principal balance*. This section does not apply to loans with maturities of less than 1 year, if the purpose of the loan is a "bridge" loan connected with the acquisition or construction of a dwelling intended to

become the borrower's principal dwelling.

(Emphasis added). McCann contends that the loan agreement, with a term of three months, and the balloon note, with a term of 18 months, do not have terms which meet the criteria of § 1635 and therefore, the contracts are void because they violate this statute and public policy. This provision, however, does not apply to McCann's loan from Lakeside. According to the CMPA, a "mortgage loan" is defined as follow:

> (d) "Mortgage loan" means a loan or home improvement installment contract secured by a first or subordinate mortgage or any other form of lien or a land contract that covers real property located in this state that is used as the borrower's principal dwelling and is designed for occupancy by 4 or fewer families. Mortgage loan does not include any of the following:
>
> > (i) A loan transaction in which the proceeds are used to acquire the borrower's principal dwelling.
> >
> > (ii) A reverse-mortgage transaction.
> >
> > (iii) An open-end credit plan. As used in this subparagraph, "open-end credit plan" means a loan in which the lender reasonably contemplates repeated advances.
> >
> > (iv) A loan transaction in which the proceeds are not used primarily for a personal, family, or household purpose.

Mich. Comp. Laws § 445.1632(d). In this case, there is no evidence to support the

conclusion that the loan at issue was a mortgage loan as defined by the CMPA because there is no evidence that the property at issue was McCann's principal dwelling. Further, even if the property were his principal dwelling, a loan used to *acquire* a principal dwelling is excepted from the definition of "mortgage loan" in the CMPA. Mich. Comp. Laws § 445.1632(d)(i). There is no doubt that this loan was used by McCann to acquire the property in question. Therefore, the CMPA does not apply to this loan transaction and provides no basis to dismiss the complaint.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED,** that defendant's motion to dismiss be **DENIED**, and that judgment in favor of plaintiff and against defendant be entered in the amount of $101,785.20 plus interest, costs and attorney fees.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 12, 2013                             s/Michael Hluchaniuk
                                                 Michael Hluchaniuk
                                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on April 12, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Patrick G. Seyferth, and I certify that I have mailed by United States Postal Service the foregoing pleading to the defendant, a non-ECF participant, at the following address: David McCann, 1251 Edgeorge, Waterford, MI 48327.

      s/Tammy Hallwood
      Case Manager
      (810) 341-7887
      tammy_hallwood@mied.uscourts.gov